UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAUREN MARTINEZ,

      Plaintiff,

v.                                    Case No:  2:20-cv-545-JES-MRM

ASPEN   DENTAL   MANAGEMENT,
INC. and R. DUSTIN DIXON DMD
HOLDINGS,  PLLC,  a  Florida
limited liability company,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendants' Motion for Summary Judgment and Incorporated Memorandum of Law In Support Thereof (Doc. #31) filed on October 25, 2021. Plaintiff filed a Response in Opposition (Doc. #37) on November 22, 2021, to which Defendants filed a Reply (Doc. #40) on December 6, 2021.

### I.

Plaintiff Lauren Martinez (Plaintiff or Martinez) filed a four-count Amended Complaint against her former employer Aspen Dental Management, Inc. (Aspen Dental) and Dustin Dixon DMD Holdings, PLLC (Dixon) (collectively the Defendants). (Doc. #26.) Defendants seek summary judgment on all the claims in the Amended Complaint. (Doc. #31.)

**A. Factual Background[1]**

The material relevant facts are as follows: Plaintiff was employed by Defendants from October 2018 until her termination on June 2, 2020. (Doc. #26, ¶¶ 7, 20-21; Doc. #37-3, p. 16.)[2] Plaintiff worked as an assistant office manager for Dixon's dental practice (a/k/a Aspen Dental) located in Cape Coral, Florida. (Doc. #32-2, ¶¶ 2-3; Doc. #37-3, p. 16.) As an assistant office manager, Plaintiff assisted manager Dale Pinsonnault (Pinsonnault) with organization of staff members, consulted with patients about treatment plans, and handled financing and insurance issues. (Doc. #32-2, ¶¶ 3, 9-10; Doc. #37-3, p. 16.) When Pinsonnault was absent from the office, Plaintiff was the acting office manager. (Doc. #32-2, ¶ 9.) Plaintiff reported to Pinsonnault, who in turn directly reported to regional manager Rachel Roberts (Roberts). (Doc. #32-2, ¶ 4; Doc. #32-3, ¶¶ 6-7.)

During her employment at Aspen Dental, Plaintiff made negative comments about Pinsonnault, and at times, agreed with other employees who complained and talked negatively about

---

[1] The background facts are either undisputed or read in the light most favorable to Plaintiff as the nonmoving party. However, these facts, accepted at the summary judgment stage of the proceedings, may not be the "actual" facts of the case. Harris v. Wingo, 845 F. App'x 892, 896 (11th Cir. 2021).

[2] The page numbers refer to those generated by the Court's computer system upon filing (upper left-hand corner) and do not always correspond with the page number at the bottom of the document.

Pinsonnault. (Doc. #37-3, pp. 48-49.) Pinsonnault confronted Plaintiff about her comments and informed her that it was creating a negative work environment. (Doc. #32-2, ¶¶ 11-12.) Thereafter, the working relationships between Pinsonnault, Plaintiff, and other staff members became strained. (Id.)

In December 2019, Plaintiff informed Defendants that she was pregnant and intended to take eight weeks of leave upon the birth of her child. (Doc. #37-3, pp. 19-20.) Defendants approved Plaintiff's leave request. (Id., p. 20.)

On January 29, 2020, Pinsonnault received an email from Aspen Dental's Cash Management Department, informing him that the end-of-day deposit for January 23, 2020 had never been deposited. (Doc. #32-2, ¶ 14.) Pinsonnault began an investigation into the missing deposit, during which he realized Plaintiff was the acting office manager on January 23rd and was responsible for ensuring the deposit was completed. (Id., ¶ 15.) Despite speaking with other employees, Pinsonnault could not locate the missing deposit. (Id., ¶ 16.)

On January 30, 2020, Roberts visited Aspen Dental to assist with Pinsonnault's investigation. (Id., ¶ 17; Doc. #32-3, ¶ 15.) When Roberts spoke with Plaintiff about the missing deposit, Plaintiff did not want to speak with the police and was "antagonistic." (Doc. #32-3, ¶¶ 16-17.) Following the investigation, Roberts considered terminating Plaintiff at the behest of Dr. Niera. (Id., ¶ 18.) Roberts scheduled a staff meeting

to remind the staff of their job responsibilities and discuss best practices moving forward. (Id., ¶ 19.) Roberts found Plaintiff to be disengaged and not receptive to feedback during the staff meeting; Roberts intended on speaking with Plaintiff after the meeting. (Id.) Plaintiff, however, prematurely left the meeting due to experiencing labor pains. (Id.) On February 8, 2020, three days later, Plaintiff delivered her child and commenced her eight weeks of leave. (Doc. #37-1, ¶ 3; Doc. #37-3, p. 7.)

While Plaintiff was on maternity leave, the COVID-19 pandemic arose. (Doc. #32-2, ¶ 21.) The Aspen Dental clinic was only permitted to be open for emergency dental procedures and all employees were furloughed except for a limited skeleton crew, which was expected to last until mid-May. (Id., ¶¶ 21, 23.) On April 1, 2020, Plaintiff was cleared by her doctor to return to work following her maternity leave, but the Aspen Dental office did not reopen until April 27, 2020. (Id., ¶¶ 22, 24.) Upon reopening, Plaintiff returned to Aspen Dental and continued working as assistant office manager without disruption until May 26, 2020. (Id., ¶ 25; Doc. #37-3, p. 23.) Plaintiff's teenage daughter, who was participating in online/virtual high school classes at home, cared for Plaintiff's two younger children while Plaintiff was working. (Doc. #32-1, pp. 23-24.)

On May 26, 2020, Plaintiff informed Pinsonnault that she would not be able to come to work because her daughter was "sick" and

was unable to watch her two younger children.[3] (Doc. #37-2, p. 1.) On the following day, Plaintiff again informed Pinsonnault that she would not be at work because her daughter was still "pretty sick" and her son was now "sick." (Doc. #37-2, p. 1.) Pinsonnault approved Plaintiff's time off for each day. (Doc. #32-1, p. 26.)

On the evening of May 27, 2020, Plaintiff texted Pinsonnault the following:

> Hi Dale! I apologize but I'm going to have to miss tomorrow also. Emilia is still sick so she can't take care of Luka and Braxton, but honestly we need to discuss me working from home. She's [Emilia] not capable of taking care of them and really she doesn't need to be left alone all day herself. I don't know what protocol is for that but I really can't leave a child to watch an infant and a toddler[.] I don't even know if that's legal[.]

(Doc. #37-2, p. 4.) Pinsonnault replied that he spoke with Roberts, who confirmed that Aspen Dental did not have any available positions at the time that would permit Plaintiff to work from home.[4] (Id., p. 5.) Plaintiff responded, as follows:

> It's fine. I figured you'd check with her [Roberts] first. I had thought Rachel [Roberts] said on the zoom call that there were employees working from home but I guess not. It's not a matter of not being able to afford it, it's the daycare and school being closed. Well I'm

---

[3] Plaintiff explained that her mother would not come over to watch Plaintiff's children because "she doesn't want to be around anyone sick." (Doc. #37-2, p. 1.)

[4] Pinsonnault informed Plaintiff that Aspen Dental allowed people who worked in the "call center" to work from home, but most of the positions were furloughed and when positions open up it "is hard to get in." (Doc. #37-2, p. 5.)

not quitting my job but I can't leave them home alone
anymore so I guess I just won't be getting paid?

(Id., p. 6.) Pinsonnault suggested daycare as a possibility, but Plaintiff responded that "Braxton's [daycare] is at capacity and Luka in [sic] on waiting list." (Id., p. 7.) Pinsonnault informed Plaintiff that Roberts advised him to reach out to Human Resources to determine what could be done about the situation. (Id., p. 8.)

After hearing from Human Resources, Pinsonnault informed Plaintiff that "we cannot continue to have you just not come in to work and retain the spot . . . if you cannot come in due to child care (or not warning [sic] to leave your daughter with the baby which I understand) is the position is vacated.  Meaning you no longer have a job here." (Id.) Plaintiff responded by asking are you telling me I do not have a job, or can I return to work on Monday? (Id., p. 10.)

Plaintiff again text Pinsonnault on May 29, 2020, stating:

Ok so after re-reading our communication over the last
few days I don't need any clarification, but I think you
do. I didn't come to work bc [sic] my children were sick
so I had to call out and I'm pretty sure that doesn't
constitute being let go or that I vacated my position.
I've communicated with you this entire time and you were
okay with me staying home for that.  All I said is I
wanted to discuss with you about working from home bc
[sic] I thought that was an option[.] I never once said
that's what I was definitely doing or not coming back to
work. I'm not sure what you communicated to Hr or anyone
else for that matter but I never vacated anything.  I
simply asked a question.  I guess you should let your
entire staff go if people can't call out.

(Id., pp. 11-12.) Pinsonnault responded that he only asked Human Resources about Plaintiff remaining off from work for the time being due to her "day care situation." (Id., p. 12.) Pinsonnault informed Plaintiff that she could return to work on the upcoming Monday, June 1, 2020, or "can opt for a 30 day leave of absence but it does not guarantee your job will be there after." (Id., p. 13.)  Plaintiff communicated with Pinsonnault that she believed the situation "should have been handled more professionally." (Id., p. 14.) Pinsonnault, in turn, told Plaintiff that he was only trying to help her – he reminded Plaintiff that he was her boss and she should not question his professionalism or intentions. (Id., p. 16.)

On June 1, 2020, Plaintiff did not come to work at Aspen Dental, nor did she inform Pinsonnault that she would not be present; Plaintiff, however, sent an email to Defendant's HR Department seeking clarity about what had transpired in her text messages with Pinsonnault. (Doc. #32-2, ¶ 35; Doc. #37-2, pp. 18-19.) Roberts contacted Plaintiff via text when she learned Plaintiff had not return to work, and asked Plaintiff if she was able to return to work tomorrow on June 2, 2020, to which Plaintiff replied, "yes I can return tomorrow." (Doc. #32-3, ¶ 30.)

On June 2, 2020, Roberts met with Dr. Niera and Pinsonnault to discuss Plaintiff's unprofessional conduct that occurred prior to her pregnancy leave, including the investigation into the

missing deposit, and Plaintiff's interaction with Pinsonnault via text, and determined that Roberts should speak with Plaintiff when she arrived at work. (Doc. #32-3, ¶¶ 34-36.) Upon meeting with Plaintiff, Roberts apologized for any miscommunication that happened between Plaintiff and Pinsonnault, and Roberts expressed that going forward she wanted Plaintiff to work cooperatively with Pinsonnault. (Id., ¶ 38.) When Roberts began to address Plaintiff's past behavior, Plaintiff would not accept any responsibility, which led Roberts to believe that Plaintiff would not be able to professionally work with others in the office. (Id., ¶¶ 39-40.) Roberts therefore terminated Plaintiff's employment. (Id., ¶ 40.)

**B. Procedural Background**

On February 19, 2021, Plaintiff filed the operative four-count Amended Complaint against Defendants, seeking relief under the Family and Medical Leave Act of 1933 (FMLA), and the Emergency Family and Medical Leave Expansion Act (EFMLEA)[5]. (Doc. #26.)

---

[5] On April 1, 2020, Congress enacted the Families First Coronavirus Response Act (FFCRA) to give workers affected by COVID-19 the opportunity to obtain paid leave. See Pub. L. No. 116-127, 134 Stat. 178 (2020). "The FFCRA contains two acts providing for such relief: the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave Expansion Act ("EFMLEA")". O'Bryan v. Joe Taylor Restorations, No. 20-80993-CV-DIMITROULEAS, 2021 U.S. Dist. LEXIS 97270, at *6 (S.D. Fla. Apr. 20, 2021). The EFMLEA, which amends Title 1 of the Family and Medical Leave Act, 29 U.S.C. 2601 et seq. (FMLA), permits certain employees to take up to twelve weeks of expanded family and medical leave for specified reasons related to COVID-19. 85 Fed. Reg. 19326-01, 19326 (Apr. 6, 2020) (to be codified at 29 C.F.R. pt. 826). The EFMLEA

Plaintiff asserts the following claims against Defendants: (1) violation of the FMLA – interference; (2) violation of the FMLA – retaliation; (3) violation of the EFMLEA – interference; and (4) violation of the EFMLEA – retaliation. (Id., pp. 6-12.) Defendants seek summary judgment on all counts, arguing there are no genuine issues of material fact and they are entitled to summary judgment as a matter of law. (Doc. #31.) For the reasons set forth below, the motion is granted.

## II.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). However, "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." Solliday v. Fed. Officers, 413 F. App'x 206, 207 (11th Cir. 2011) (citation omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational

---

was effective from April 2, 2020, and expired on December 31, 2020. 85 Fed. Reg. 19,326 (Apr. 6, 2020); 29 C.F.R. § 826.10(b)(1).

trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party. Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). "If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007).

**III.**

**A. FMLA Provisions**

"The FMLA provides eligible employees the right to 12 weeks of leave for a serious health condition that makes the employee unable to perform the functions of her position." Munoz v. Selig Enterprises, Inc., 981 F.3d 1265, 1274 (11th Cir. 2020) (citing Batson v. Salvation Army, 897 F.3d 1320, 1328 (11th Cir. 2018)); 29 U.S.C. § 2612(a)(1)(D)). The FMLA also creates private causes of action for equitable relief and money damages for employer violations of the FMLA. 29 U.S.C. §§ 2615(a)(1), 2617(a). An employee may bring two types of FMLA claims: "interference claims, in which an employee asserts that h[er] employer denied or otherwise interfered with h[er] substantive rights under the Act; and retaliation claims, in which an employee asserts that h[er] employer discriminated against h[er] because [s]he engaged in an activity protected by the Act." Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001). See also Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1166 (11th Cir. 2014) ("the FMLA allows employees to bring a private cause of action for interference or retaliation."). Both FMLA interference and retaliation claims require the employee to establish that she qualified for leave. Hurley, 746 F.3d at 1166-67.

### B. EFMLEA Provisions

"Generally, the EFMLEA temporarily amends the FMLA to expand its applicability to certain employees for up to 12 weeks of paid leave per year 'because of a qualifying need related to a public emergency.'" Collazo v. Ferrovial Construcción PR, LLC, No. 20-1612 (DRD), 2021 WL 4482268, 2021 U.S. Dist. LEXIS 191397, at *12-13 (D.P.R. Sept. 30, 2021) (quoting 29 U.S.C. § 2612(a)(1)(F)). An employee has such a qualifying need if:

> the employee is unable to work (or telework) due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, or the child care provider of such son or daughter is unavailable, due to a public health emergency.

29 U.S.C. § 2620(a)(2)(A). The requisite "public health emergency" must be related to COVID-19. Id. at § 2620(a)(2)(B).

"The acts that are prohibited as to FMLA, are equally prohibited as to EFMLEA, such as, interference with the exercise of rights, discrimination, and retaliation."[6] Collazo, 2021 U.S. Dist. LEXIS 191397, at *14-15 (D.P.R. Sept. 30, 2021)(citing 29 C.F.R. § 826.151(a)); see also Martin v. Fin. Asset Mgmt. Sys., 959 F.3d 1048, 1052 (11th Cir. 2020) ("In plain English, an employer may not do bad things to an employee who has exercised or

---

[6] The Department of Labor issued regulations clarifying that the interference and retaliation provisions of the FMLA, 29 U.S.C. § 2615, apply will equal force to the rights created by the EFMLEA. See 29 C.F.R. § 826.151(a) (2020).

attempted to exercise any rights under the statute."). Because "there is scant caselaw interpreting the possible issues arising from the [EFMLEA] statute or the regulations," <u>Colombe v. SGN, Inc.</u>, No. 5:20-CV-374-REW, 2021 U.S. Dist. LEXIS 59485, 2021 WL 1198304, at *2 (E.D. Ky. Mar. 28, 2021), the Court will look to the pertinent statutory language and regulations, as well as FMLA cases to construe the EFMLEA.

**IV.**

**A. Count I – Plaintiff's FMLA Interference Claim**

Count I of the Amended Complaint alleges that Defendants interfered with Plaintiff's right to FMLA leave by terminating her employment upon learning Plaintiff needed leave to care for children who suffered from serious health conditions. (Doc. #26, ¶¶ 25-25, 30.)

"To establish an FMLA interference claim, an employee must show she was entitled to a benefit under the FMLA and her employer denied her that benefit." <u>Ramji v. Hosp. Housekeeping Sys., LLC</u>, 992 F.3d 1233, 1241 (11th Cir. 2021) (citing <u>Munoz</u>, 981 F.3d at 1274). For an employee to show she is entitled to a benefit, "she must demonstrate that she sought leave for a qualifying reason and that she provided notice meeting certain criteria." <u>Id.</u> (citing <u>White v. Beltram Edge Tool Supply, Inc.</u>, 789 F.3d 1188, 1194-96 (11th Cir. 2015)). A qualifying reason under the FMLA includes when an employee needs leave "[i]n order to care for the spouse,

or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." <u>Liu v. Univ. of Miami Sch. of Med.</u>, 693 F. App'x 793, 799 (11th Cir. 2017) (quoting 29 U.S.C. § 2612(a)(1)(C)).

Defendants do not dispute that Plaintiff was terminated, but they contend that the evidence makes clear that Plaintiff was not entitled to a FMLA benefit because neither of her children suffered from a serious medical condition.  Defendants also argue that they did not interfere with any FMLA benefit because they never received notice from Plaintiff that she was requesting FMLA leave. (Doc. #31, pp. 11-15.) The Court will address Defendants' arguments in turn.

### (1)  Serious Health Condition Under The FMLA

"As defined in the FMLA, 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."[7] <u>Hurlbert v. St. Mary's Health Care Sys.,</u>

---

[7] Legislative history states that examples of "serious health conditions" include, but are not limited to, the following:

> heart attacks, heart conditions requiring heart bypass of valve operations, most cancers, back conditions requiring extensive therapy or surgical procedures, strokes, severe respiratory conditions, spinal injuries, appendicitis, pneumonia, emphysema, severe arthritis, severe nervous disorders, injuries caused by serious accidents on or off the job, ongoing pregnancy,

Inc., 439 F.3d 1286, 1294 (11th Cir. 2006) (quoting 29 U.S.C. §
2611(11))(internal quotations omitted). Plaintiff does not allege
her children received inpatient care, so the focus falls on whether
her children's condition involved "continuing treatment by a
health care provider." The regulations provide that such a
situation exists in either of the following circumstances:

> (a) Incapacity and treatment. A period of incapacity of
> more than three consecutive, full calendar days, and any
> subsequent treatment or period of incapacity relating to
> the same condition, that also involves:
>
> > (1) Treatment two or more times, within 30 days of
> > the first day of incapacity, unless extenuating
> > circumstances exist, by a health care provider,
> > by a nurse under direct supervision of a health
> > care provider, or by a provider of health care
> > services (e.g., physical therapist) under orders
> > of, or on referral by, a health care provider; or
> >
> > (2) Treatment by a health care provider on at least
> > one occasion, which results in a regimen of
> > continuing treatment under the supervision of the
> > health care provider.

---

> miscarriages, complications or illnesses related to
> pregnancy, such as severe morning sickness, the need for
> prenatal care, childbirth and recovery from childbirth.

S. Rep. No. 103-3, at 29, reprinted in 1993 U.S.C.C.A.N. at 31.
Congress sought to exempt those "minor illnesses which last only
a few days and surgical procedures which typically do not involve
hospitalization and require only a brief recovery period." Id.
According to Congress, these illnesses should be covered by the
employer's sick leave policy. Id.

29 C.F.R. § 825.115(a).[8] "Ordinarily, unless complications arise, the common cold, the flu, ear aches, [or] upset stomach . . . are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." 29 C.F.R. § 825.113(d); <u>Garcia v. Delta Air Lines</u>, No. 17-23807-Civ, 2019 U.S. Dist. LEXIS 4136, at *7 (S.D. Fla. Jan. 8, 2019)(stating the same). Thus, "not all leave requested or taken for medical reasons qualifies for the FMLA's protections." <u>Cash v. Smith</u>, 231 F.3d 1301, 1307 (11th Cir. 2000).

Plaintiff argues that her son had a serious illness because he received treatment from a health care provider[9] at least twice during the first thirty days of his incapacity. Plaintiff also argues that she qualified for FMLA leave because her son was unable to "care for his . . . own basic medical, or hygienic, or nutritional needs or safety, or was unable to transport himself . . . to the doctor" due to a serious health condition. (Doc. #37, p. 17.) Similarly, Plaintiff argues that she was entitled to FMLA leave with respect to her daughter since her daughter experienced

---

[8] "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom. 29 C.F.R. § 825.113(b).

[9] See <u>infra</u> note 15 for the definition of health care provider under the FMLA.

"symptoms consistent with COVID-19[10]" and was unable to attend school[11], thus requiring Plaintiff to stay home and provide psychological comfort to her daughter. (Doc. #37, p. 17.) Defendants, on the other hand, argue that Plaintiff cannot establish that her children suffered from a serious health condition because she has failed to present any evidence showing they received treatment on two or more occasions within 30 days of the first day of incapacity, or a regimen of continued medical treatment[12] from a health care provider. (Doc. #31, p. 13.) Upon careful review of the record, the Court agrees with Defendants.

---

[10] While Plaintiff suggests that her daughter had symptoms consistent with COVID-19, Plaintiff confirmed that her daughter did not undergo COVID-19 testing, and she was not treated for it, nor did Plaintiff inform Defendants that she thought her daughter may have contracted the virus. (Doc. #32-1, p. 22.)

[11] The record evidence shows that Plaintiff's daughter was not attending school in person, prior to, or during her purported sickness, rather she took part in online/virtual classes at home. (Doc. #32-1, pp. 23-24.)

[12] Under the Code of Federal Regulations, a regimen of continuing treatment includes

> for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

Plaintiff testified that her son and daughter had a fever, experienced diarrhea, and were lethargic for a "week or so." (Doc. #32-1, pp. 22, 25.) Plaintiff, however, confirmed that her daughter was not examined by a health care provider, and was not prescribed or given any medication as part of a regimen of continuing treatment. (Id., p. 22.) In the absence of any complications and with no treatment from a health care provider, symptoms like that experienced by Plaintiff's daughter do not meet the criteria of a serious health condition under the FMLA. See 29 C.F.R. § 825.113(d); Garcia, 2019 U.S. Dist. LEXIS 4136, at *7; Cash, 231 F.3d at 1307.

Other than a response to a vague question[13], the record is devoid of any evidence showing that her son was under a regimen of continuing treatment or was ever prescribed or given medication. Thus, no genuine dispute exists as to whether Plaintiff's son suffered from serious medical condition. See Solliday, 413 F. App'x at 207 ("[c]onclusory, uncorroborated allegations by a plaintiff

_____

29 C.F.R. § 825.113.

[13] During her deposition, Plaintiff was asked the following question about her son's treatment:

Q.  Did he have to go back in more than once [to the doctor] or was it just a, Hey, he's sick, make sure he's okay because he's an infant?

A.  Yes.

(Doc. #32-1, p. 25).

in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion."); see, e.g., Dorris v. Walmart, Inc., No. 5:19-cv-180-MCR-MJF, 2021 U.S. Dist. LEXIS 58694, at *12 (N.D. Fla. Mar. 28, 2021)(granting summary judgment upon a finding that the plaintiff's statement that she suffered from a serious medical condition, without supporting medical evidence, was insufficient to support an FMLA interference claim); Milman v. Fieger & Fieger, P.C., No. 2:20-cv-12154, 2021 WL 2284445 2021 U.S. Dist. LEXIS 105159, at *11-13 (E.D. Mich. June 4, 2021) (concluding that the plaintiff failed to show that her son, who had fallen ill in March 2020 with a cough, runny nose, and gastrointestinal issues, suffered from a "serious health condition," where there was no evidence of inpatient care or continuing treatment by a health care provider); Blake v. City of Montgomery, 492 F. Supp. 3d 1292, 1301-03 (M.D. Ala. 2020) (plaintiff's failure to present any medical evidence of a diagnosis of a qualifying medical condition — either before or after the need for leave arose — was fatal to the interference claim); Ryman v. Sears, Roebuck and Co., No. 05-CV-1106-BR, 2006 WL 1720534, 2006 U.S. Dist. LEXIS 44964 (D. Or. June 19, 2006) (granting summary judgment on a FMLA claim where the plaintiff "has not provided any evidence such as a doctor's note or other medical documentation to show that his child's croup constituted a 'serious health condition.'").

**(2)  Notice Under The FMLA**

Defendants also argue that even if Plaintiff's children had a "serious health condition," Plaintiff failed to communicate enough information by which Defendants could determine her request for time off was indeed a FMLA leave request. (Doc. #31, p. 14.)

Where an employee's need for FMLA leave is unforeseeable, as in the instant case of sudden illness, "the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason," Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005), which includes "anticipated timing and duration." Crawford v. City of Tampa, 464 F. App'x 856, 858 (11th Cir. 2012) (per curiam). When the employee "gives sufficient notice to her employer that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection." Cruz, 428 F.3d at 1383.

The undisputed evidence shows that on May 26, 2020, Plaintiff communicated to Pinsonnault that she could not come into work because her daughter was "sick." (Doc. #37-2, p. 1.) Likewise, Plaintiff informed Pinsonnault that she could not work the following day because her daughter was still "pretty sick" and now her son was also "sick." (Id.) Finally, Plaintiff informed her employer she would still not be at work on May 28, 2020, because

her daughter was still "sick" and could not care for her two younger children. (Id., p. 4.)

Viewing the evidence in a light most favorable to Plaintiff, the Court finds that as a matter of law Plaintiff did not provide sufficient information to "reasonably apprise [Defendants] of the [her] request to take time off for [her children's] serious health condition[s]." Gay v. Gilman Paper Co., 125 F.3d 1432, 1435 (11th Cir. 1997).  The FMLA "does not require an employer to be clairvoyant", Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 980 (5th Cir. 1998), therefore "calling in 'sick' without providing more information will not be considered sufficient notice by an employee to trigger an employer's obligations under the [FMLA]." 29 C.F.R. § 825.303; see, e.g., Dorris, 2021 U.S. Dist. LEXIS 58694, at *14 (where employee had the flu and called in "sick," it was not sufficient notice under the FMLA); Avila v. Childers, 212 F. Supp. 3d 1182, 1192 (N.D. Fla. 2016)(a vague doctor's note with references to the plaintiff being "sick" and needing time off from work was insufficient notice); Andrews v. CSX Transp. Inc., 737 F. Supp. 2d 1342, 1351-52 (M.D. Fla. 2010) (phoning in "sick" or providing a doctor's note for "unspecified ailments" is insufficient notice); Collins v. NTN-Bower Corp., 272 F.3d 1006, 1009 (7th Cir. 2001) (noting a mere reference to being sick "did not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable").

Accordingly, Defendant is entitled to summary judgment that it did not interfere with Plaintiff's FMLA benefits.

### B. Count II – Plaintiff's **FMLA** Retaliation Claim

Count II of the Amended Complaint alleges a FMLA retaliation claim against Defendants. (Doc. #26, ¶¶ 40-45.) Specifically, Plaintiff alleges that she engaged in protected activity when she requested leave for "her [children's] serious medical condition[14]," that Defendants were aware of her need for FMLA-leave, and that Defendants retaliated against her when they terminated her employment and failed to restore her to the assistant office manager position. (Id.)

"The FMLA prohibits employers from retaliating against employees for engaging in protected activities." Munoz, 981 F.3d at 1275. To establish an FMLA retaliation claim, Plaintiff "must demonstrate that h[er] employer intentionally discriminated against h[er] in the form of an adverse employment action for having exercised an FMLA right." Aponte v. Brown & Brown of Fla., Inc., 806 F. App'x 824, 829 (11th Cir. 2020) (quoting Strickland, 239 F.3d at 1207). Where a plaintiff, as here, relies upon circumstantial evidence of retaliation, courts "evaluate

---

[14] Although the Amended Complaint alleges that Plaintiff made a FMLA leave request concerning her own serious health condition, she clarified during her deposition that none of her claims were related to her health, rather they pertained to her children's health. (Doc. #32-1, p. 52.)

retaliatory-discharge claims under [the FMLA] employing the burden-shifting framework we use to assess retaliation claims in Title VII cases." Todd v. Fayette Cnty. Sch. Dist., 998 F.3d 1203, 1219 (11th Cir. 2021). Therefore, Plaintiff "must make a prima facie case showing that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." Munoz, 981 F.3d at 1275. If Plaintiff establishes a prima facie case against Defendants, Defendants must articulate a non-retaliatory, lawful reason for the adverse employment action. See Martin v. Brevard Cnty. Pub. Schs., 543 F.3d 1261, 1267 (11th Cir. 2008).

Defendants argue that Plaintiff cannot establish that they retaliated against her because she was not eligible for FMLA leave since neither of her children suffered from a serious medical condition. (Doc. #31, pp. 20-21.) Defendants are correct that "to state a claim for interference or retaliation, the plaintiff must have been eligible for the leave that she sought, which, as relevant here, means showing that [her children] suffered from a serious health condition." Martin, 959 F.3d at 1052; see, e.g., Russell v. N. Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003) ("Interference and retaliation claims both require the employee to establish a 'serious health condition.'"); Cash, 231 F.3d at 1307 (plaintiff "failed to present evidence that she exercised a

protected right under the FMLA" because she did not present evidence of a serious health condition).

As discussed in the prior section, Plaintiff failed to provide evidence creating a material disputed fact as to whether her children had a "serious health condition" under the FMLA by showing they received treatment from a health care provider two or more times (within 30 days of the first day of incapacity) or engaged in a regimen of continuing treatment. Because Plaintiff failed to meet either requirement, she cannot establish a prima facie case for retaliation. The Court therefore finds that Defendants are entitled to summary judgment as to Plaintiff's FMLA retaliation claim. See Wooddy v. Delta Air Lines, No. 17-23808-Civ-SCOLA/TORRES, 2019 WL 659359, 2019 U.S. Dist. LEXIS 4135, at *18-19 (S.D. Fla. Jan. 8, 2019) (granting summary judgment where plaintiff did not provide evidence that she suffered from a serious medical condition and therefore could not establish a prima facie case of FMLA retaliation).

### C. Count III – Plaintiff's EFMLEA Interference Claim

In Count III of the Amended Complaint, Plaintiff alleges that Defendants interfered with her rights under the EFMLEA when they terminated her employment on June 2, 2020. (Doc. #26, ¶¶ 47-57.) Plaintiff argues that she was entitled to paid family leave under the EFMLEA because she was unable to work due to her regular childcare provider, i.e., her daughter, being unavailable for

24

reasons related to a public health emergency – COVID-19. (Doc. #37, pp. 15-16.) Defendants, however, argue that they did not interfere with any of Plaintiff's EFMLEA benefits because (1) Plaintiff was not eligible for EFMLEA-leave; and (2) Plaintiff has failed to provide any evidence that she lost her childcare due to reasons related to COVID-19. (Doc. #31, pp. 15-17.) The Court will address each argument in turn.

**(1)  Plaintiff's Eligibility Under The EFMLEA**

The parties dispute whether Plaintiff was eligible for coverage under the EFMLEA because portions of the FFCRA's Final Rule that exempted Plaintiff from coverage were found to be invalid and were severed from the Final Rule on August 3, 2020.  The Court will provide a brief history.

As previously mentioned, the EFMLEA, a provision of the FFCRA, entitles an "employee" to paid leave where he or she is unable to work due to a need to care for his or her son or daughter whose childcare provider is unavailable for reasons related to COVID-19. 29 U.S.C. § 2620(a)(2)(A). The FFCRA permitted the Secretary of Labor to issue regulations to exclude certain health care providers and emergency responders from the definition of "employee," including allowing the employer of such "health care providers" and "emergency responders" to opt out.  See FFCRA § 5111.  Although the FFCRA adopted the FMLA's definition of "health

care provider,"[15] in April 2020 the U.S. Department of Labor (DOL) issued a Final Rule which defined, in part, a "health care provider" as "*anyone* employed at *any doctor's office,* hospital, [or] health care center . . . . or site where medical services are provided that are similar to such institutions . . . ." 85 Fed. Reg. 19,326, 19,351 (29 C.F.R. § 826.25) (Apr. 6, 2020)(emphasis added).   In effect, the April 2020 Final Rule broadly excluded employees like Plaintiff, who worked at *any* doctor's office, from receiving coverage under the EFMLEA.

On August 3, 2020, a New York District Court found this portion of the Final Rule to be invalid because the DOL exceeded its authority by expanding the definition of "health care provider" beyond the statutory definition. See New York v. United States Dep't of Labor, 477 F. Supp. 3d 1, 15 (S.D.N.Y. 2020). Pursuant to the Administrative Procedure Act (APA), the New York Court severed and vacated this portion (as well as other portions) from the Final Rule. Id. at 18-19.

---

[15] Under the FMLA, the term "health care provider" means —

(A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or

(B) any other person determined by the Secretary to be capable of providing health care services.

29 U.S.C. § 2611(6)(A)-(B).

On September 16, 2020, the DOL acknowledged the New York District Court's decision and revised the Final Rule by providing a narrower definition of "health care provider," which includes

> Any other Employee who is capable of providing health care services, meaning he or she is employed to provide diagnostic services, preventive services, treatment services, or other services that are integrated with and necessary to the provision of patient care and, if not provided, would adversely impact patient care.

See 29 C.F.R. § 826.30.

The parties dispute which version of the Final Rule should apply, and thus, whether Plaintiff is eligible for benefits under the EFMLEA.  Plaintiff argues the April 2020 Rule does not apply to this matter because it was vacated.  Plaintiff maintains that when a court vacates an agency's rule, the vacatur restores the status quo before the invalid rule took effect. (Doc. #31, pp. 13-14.) Accordingly, Plaintiff argues that the definition initially adopted by the FFCRA — the FMLA's definition of "health care provider" – applies.  While Plaintiff acknowledges the revised September 2020 Rule that redefined the term "health care provider," she asserts that it is inapplicable to her claim because it cannot be applied retroactively. (Id., p. 13.) In sum, Plaintiff argues that the Court should find the FMLA definition of "health care provider" applies, and that because Plaintiff does not fall under this definition, she is eligible for EFMLEA coverage. (Id., p. 14.)

Defendants respond that at the time they learned that Plaintiff's children were sick (May 2020), as well as at the time of her termination (June 2020), Plaintiff was not entitled to EFMLEA protections because the April 2020 Final Rule was in effect. Defendants emphasize that they could have not predicted what a court may or may not have invalidated in the future; rather they could only treat Plaintiff in a manner consistent the law as written at that time. (Doc. #31, p. 15; Doc. #40, p. 3 n.4.) Alternatively, Defendants argue that even under the revised September 2020 Rule, Plaintiff would still be exempt as she was integral to the provision of dental services to patients. (Doc. #31, p. 15.)

The revised September 2020 Rule was not in effect at any time prior to Plaintiff's June 2020 termination, and does not expressly state that it is to be applied retroactively. As such, the September 2020 Rule does not have retroactive application as to Plaintiff's EFMLEA claims. See, e.g., Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) (The presumption against retroactivity applies to administrative rules as well: "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); Sierra Club v. TVA, 430 F.3d 1337, 1351 (11th Cir. 2005) ("Retroactive application of administrative rules is highly disfavored, and they will not be construed to have

retroactive effect unless their language requires this result") (quotations omitted). This is not the end of the Court's inquiry, however, as the Court must determine whether the definition of "health care provider" under the April 2020 Final Rule or the definition initially adopted under the FFCRA — the FMLA's definition — applies.

Plaintiff is correct that when an agency rule is vacated, the vacatur restores the status quo before the invalid rule took effect. See, e.g., Beltran v. 2 Deer Park Drive Ops. LLC, No. 20-8454 (MAS) (LHG), 2021 WL 794745, 2021 U.S. Dist. LEXIS 37291, at *18 (D.N.J. Feb. 28, 2021); Kinkead v. Humana, Inc., 206 F. Supp. 3d 751, 753-54 (D. Conn. 2016); Nat'l Parks Conservation Ass'n v. Jewell, 62 F. Supp. 3d 7, 21 (D.D.C. 2014). Applying this reasoning to the present matter, the Court finds that New York district court's August 2020 vacatur in effect restored the status quo prior to the implementation of the April 2020 Final Rule, and thus, the FFCRA's, i.e., the FMLA's definition of "health care provider," is applicable to Plaintiff. See, e.g., Beltran, 2021 U.S. Dist. LEXIS 37291, at *18 (concluding that even though the revised September 2020 Rule is not retroactive, the Court was required to set the initial April 2020 Rule aside because it was "not lawfully promulgated" and to apply the FFCRA's initial definition of health care provider); see also Payne v. Woods Servs., 520 F. Supp. 3d 670, 677 (E.D. Pa. 2021)(stating "That the

April Rule was in place at the time of Plaintiffs firing is irrelevant when the Rule itself was not lawfully promulgated" and "because the September Rule was not yet in effect at the time of Plaintiff's firing, and it does not have retroactive application, the definition in the FFCRA itself is the one that the Court should apply."); Simone v. Harborview Rehabilitation & Care Ctr., No. 20-3551, 2021 WL 2291341, 2021 U.S. Dist. LEXIS 105053, at *11 (E.D. Pa. June 3, 2021) (concluding the same).

As an "assistant office manager" at Aspen Dental, Plaintiff does not fall under the FFCRA's definition of health care provider because she is not a doctor of medicine or osteopathy who is authorized by the State of Florida to practice medicine or surgery, nor is there any evidence suggesting that Plaintiff's position at Aspen Dental fell under "any other person" determined by the Secretary to be capable of providing "health care services." Therefore, Plaintiff is eligible for EMFLEA coverage.

Accordingly, the Court will address the merits of Plaintiff's EFMLEA interference and retaliation claims below.

**(2)  Plaintiff's EFMLEA Interference Claim**

As with her FMLA interference claim, Plaintiff "must show she was entitled to a benefit under the [EFMLEA] and her employer denied her that benefit." Ramji, 992 F.3d at 1241; see also Jarry v. ECC Corp., No. 21-047 WES, 2022 WL 202969, 2022 U.S. Dist. LEXIS 12065, at *6 (D.R.I. Jan. 24, 2022) (setting forth same criteria

for an EFMLEA claim).  For an employee to show she is entitled to a benefit, "she must demonstrate that she sought leave for a qualifying reason and that she provided notice meeting certain criteria." Ramji, 992 F.3d at 1241. A qualifying reason under the EFMLEA includes when an employee is unable to work due to a need to care for his or her son or daughter whose school or place of care has been closed, or whose child care provider[16] is unavailable for reasons related to COVID-19. 29 U.S.C. § 2620(a)(2)(A).

Defendants argue that Plaintiff has not provided any evidence that she was entitled to EFMLEA benefits for a qualifying reason because Plaintiff admitted she did not believe her daughter suffered from COVID-19. (Doc. #31, pp. 15-16.) The evidence shows that when Plaintiff requested time off to watch her younger children from May 26, through May 29, 2020, she did so because her regular child care provider (her daughter) was "sick." (Doc. #37-2, p. 1.) When deposed, Plaintiff admitted she did not take her daughter to any doctor for COVID-19 related treatment, nor did she get her daughter tested for COVID-19. (Doc. #37-3, p. 22.) When

---

[16] A "child care provider" means a provider who receives compensation for providing child care services on a regular basis. 29 C.F.R. § 826.10.  However, under the FFCRA, "the eligible child care provider need not be compensated or licensed if he or she is a family member or friend, such as a neighbor, who regularly cares for the Employee's child." Id. There is no dispute that Plaintiff's daughter was her regular child care provider. (Doc. #31, p. 17; Doc. #37, p. 3.)

asked during her deposition whether she believed her daughter had COVID-19, Plaintiff only answered "I don't know." (Id.) Nevertheless, in her subsequent affidavit[17] Plaintiff states that she "was aware that [her daughter's] symptoms [were] consistent COVID-19 according to the U.S. Centers for Disease Control." (Doc. #37-1, ¶ 6.)

Defendants further argue that Plaintiff failed to provide any communication, i.e., any notice, from which a reasonable employer could have inferred Plaintiff was requesting EFMLEA leave.[18] (Doc.

---

[17] On December 6, 2021, Defendants filed "Rule 56(c)(2) Evidentiary Objections to Plaintiff's Declaration In Support of Plaintiff's Response In Opposition To Defendants' Motion for Summary Judgment." (Doc. #41.) In the filing, Defendants set forth various reasons why portions of Plaintiff's declaration should not be considered. (Id.) On December 15, 2021, Plaintiff filed a Notice Regarding Defendants' Objections, arguing the evidentiary objections should not be considered because it was not filed as a motion that would permit Plaintiff to reply, Defendants had already filed a Reply in support of their Motion for Summary Judgment, and the objections did not contain any certification pursuant to Local Rule 3.01(g). (Doc. #42.) In sum, Plaintiff argues that Defendants' Objections should be stricken. (Id.) For the reasons set forth in Plaintiff's Notice, the Court strikes Defendants' Objections and will not consider the filing.

[18] When requesting leave under EFMLEA, employees are required to provide the following documentation to the employer: "(1) Employee's name; (2) Date(s) for which leave is requested; (3) Qualifying reason for the leave; and (4) Oral or written statement that the Employee is unable to work because of the qualified reason to leave." 29 C.F.R. § 826.100(a). In turn, when requesting leave due to a COVID-19 related reason, such as taking leave due to the unavailability of the school or child care center, the employee must also provide: "(1) the name of the son or daughter being cared for; (2) the name of the school, place of care, or child care provider that has closed or become unavailable; and (3) a representation that no other suitable person will be caring for

#31, pp. 21-22.) Plaintiff testified that she did not inform Defendants that she was requesting time off due to any reason related to COVID-19, which comports with her text messages that she only communicated that her children were "sick." (Doc. #37-3, p. 22; Doc. #37-2, p. 2.) Furthermore, when Plaintiff texted Pinsonnault on May 27th that she was going to miss work because her daughter was "still sick" and her son was now "sick," Pinsonnault informed Plaintiff that a co-worker (Joana) could not be present at work because she believed she may have COVID-19 and was tested. (Doc. #37-2, p. 2.) Plaintiff never mentioned to Pinsonnault that she believed her daughter (or son) possibly had COVID-19, but instead only stated "[t]hat's cray [sic] hopefully she [Joana] doesn't have it[.]" (Id.)   Later that day, when Plaintiff texted Pinsonnault for a second time to discuss the possibility of Plaintiff working from home, Plaintiff again failed to mention anything with respect to her daughter having symptoms consistent with COVID-19, or that she suspected her daughter may have the virus.  (Id., p. 3.)

While there may be a genuine dispute over whether Plaintiff believed her daughter's symptoms were related to COVID-19, the

---

the son or daughter during the period for which the employee takes paid sick leave or expanded family and medical leave." Id., § 826.100(e).

evidence undisputedly shows that Plaintiff never provided the requisite notice of this belief to Defendants. Viewing the facts in a light most favorable to Plaintiff, Defendants could not have reasonably been expected to conclude that Plaintiff's need for EFLMEA leave was related to COVID-19 when Plaintiff simply informed Defendants that her regular child care provider was "sick." Compare, Johnson v. Gerresheimer Glass Inc., No. 21-cv-4079, 2022 U.S. Dist. LEXIS 5984, at *24 (N.D. Ill. Jan. 12, 2022)(an employee notifying her employer that she was diagnosed with COVID-19 was sufficient "notice" for an FMLA interference claim).

Finally, Defendants argue that Plaintiff cannot show that she was denied a benefit because she was provided the leave she requested and the FFCRA does not require employers to allow employees to engage in remote work. (Doc. #31, pp. 16-17.) Plaintiff responds that she was entitled to leave on the basis of the Emergency Resolution in Lee County[19], which required Plaintiff's children (who were suffering from "flu-like symptoms" or "symptoms consistent with COVID-19") to quarantine, and that Defendants denied her leave when they informed her that she would

---

[19] The Lee County Emergency Resolution, in part, states that "all individuals with cold and flu-like symptoms should remain in their residence and take all measures to limit the risk of exposure to COVID-19," but it does not provide the duration for which a person should quarantine. (Doc. #37-4, pp. 2-3.)

be terminated if she did not come to work.   (Doc. #37, p. 19.)
The Court does not agree with Plaintiff.

The evidence shows that Plaintiff was granted the leave she
requested from May 26, through May 29, 2020, after notifying
Pinsonnault that her children were "sick." The evidence also
suggests that Plaintiff requested that she be allowed to work from
home. (Doc. #37-2, p. 3.) Neither situation shows that Plaintiff
was denied leave for which she was entitled under the EFMLEA. See,
e.g., Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274,1284 (11th
Cir. 1999) (employee erroneously told she did not qualify for FMLA,
but who nevertheless was given equivalent leave, did not suffer
damages); see also Collazo, 2021 WL 4482268 at *22 ("Even if the
EFMLEA and EPSLA are to be construed liberally . . . requesting
telework cannot be considered a protected conduct [under the
EFMLEA] as suggested by Plaintiff."). Furthermore, while Plaintiff
seems to suggest she had to quarantine her children due to "flu-
like symptoms or symptoms consistent with COVID-19," Plaintiff
never informed her employer of the same. See (Doc. #37-2.)
Defendants could not have denied or interfered with Plaintiff
benefits due to a cause of which they were unaware. See Munoz, 981
F.3d at 1299 (no interference claim arises because defendant never
actually denied Munoz any leave to which she was entitled under
the FMLA).   Accordingly, Defendants are entitled to summary

judgment that they did not interfere with Plaintiff's EFMLEA benefits.

### D. Count IV — Plaintiff's EFMLEA Retaliation Claim

Count IV of the Amended Complaint alleges that Plaintiff engaged in protected activity under the EFMLEA when she requested three days of leave and that she be able to work from home, and that Defendants retaliated against her when they terminated her employment. (Doc. #26, ¶¶ 17, 58-69.)

As previously mentioned, to establish a retaliation claim under the EFMLEA, Plaintiff must not only demonstrate that that Defendants intentionally discriminated against her, but she must also demonstrate that "(1) [s]he engaged in statutorily protected activity; (2) [s]he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. Martin, 543 F.3d at 1268. Here, Plaintiff did not give adequate notice that she is invoking her right to EMFLEA leave, so her retaliation claim must fail. See Jarry, 2022 U.S. Dist. LEXIS 12065, at *8 (finding plaintiff's EFMLEA retaliation claim failed because the plaintiff did not provide adequate notice that she was requesting leave). Defendants could not have engaged in EFMLEA retaliation when they did not know that Plaintiff was requesting leave due to a COVID-19 related issue. Accordingly, summary judgment is granted as to Plaintiff's EMFLEA retaliation claim.

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. #31) is **GRANTED**.

2. The Clerk of the Court shall enter judgment in favor of defendants Aspen Dental Management, Inc. and R. Dustin Dixon DMD Holdings, PLLC as to all four counts of the Amended Complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this __22nd__ day of February, 2022.


JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Parties of record